**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| JASON SCHMITT, TARA SCHMITT, JAMES SCHMITT, and ANITA SCHMITT, | Civil Action No.  3:24-cv-214 |
| Defendants. | |

**COMPLAINT**

Plaintiff United States of America, through its undersigned attorneys, by the authority of

the Attorney General of the United States, and at the request and on behalf of the Administrator

of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges

as follows:

**NATURE OF THE ACTION**

1.      This is a civil action commenced under Sections 309(b) and 309(d) of the Clean

Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and 1319(d), to obtain injunctive relief and civil

penalties against Jason Schmitt, Tara Schmitt, James Schmitt, and Anita Schmitt (collectively,

"Defendants") for violations of Sections 301 and 308 of the CWA, 33 U.S.C. §§ 1311 and 1318.

Specifically, Defendants discharged pollutants to waters of the United States without

authorization from the United States Army Corps of Engineers ("Corps") on properties in

1

Warrick, Vanderburgh, and Gibson Counties, Indiana (collectively, the "Sites"). Defendants also failed to respond to administrative requests for information.

2.     In this action, the United States seeks: (1) to enjoin the discharge of pollutants to waters of the United States without a permit in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) to require Defendants, pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), at their own expense and at the direction of EPA, to restore and/or mitigate the impacts caused by their unlawful activities; and (3) to require Defendants to pay civil penalties as provided in CWA Section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the claims for relief in this Complaint pursuant to CWA Sections 309(b) and 309(d), 33 U.S.C. § 1319(b).

4.     Venue is proper in the Southern District of Indiana, pursuant to 33 U.S.C. § 1319(b), 28 U.S.C. § 1391(b) and 1391(c), and 28 U.S.C. § 1395, because Defendants reside in and conduct business in this District, the Sites are located in this District, the violations alleged herein occurred in this District, and the civil penalty sought by the United States accrued in this District.

## NOTICE

5.     Notice of the commencement of this case has been provided to the State of Indiana pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6.     The Plaintiff in this case is the United States of America.  Authority to bring this case is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519,

2

and is exercised in accordance with CWA Sections 309(b), 309(d), and 506, 33 U.S.C. §§ 1319(b), 1319(d), and 1366.

7. The Defendants in this case are: Jason Schmitt, who resides at 17101 Korff Road, Evansville, Indiana 47725; Tara Schmitt, who resides at 17101 Korff Road, Evansville, Indiana 47725; James Schmitt, who resides at 16365 Korff Road, Evansville, Indiana 47725; and Anita Schmitt, who resides at 16365 Korff Road, Evansville, Indiana 47725.

8. At all times relevant to this Complaint, one or more of the Defendants have owned, leased, or otherwise controlled and operated the Sites and performed, controlled and/or directed the activities relevant to this Complaint that have occurred at the Sites.

9. The Defendants' activities at the Sites include earthmoving, filling, and waterbody and stream altering activities for the purpose of expanding their farming operations.

10. Defendants' earthmoving, filling and waterbody and stream alteration activities have made observation of the Sites by EPA in their natural or former state impossible.

## STATUTORY AND REGULATORY BACKGROUND

### A. Clean Water Act Section 301

11. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants, including dredged and fill material, to navigable waters except in compliance with, *inter alia*, a permit issued by the Corps pursuant to CWA Section 404, 33 U.S.C. § 1344.

12. CWA Section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Corps, to issue permits for the discharge of dredged and/or fill material to navigable waters at specified disposal sites, after notice and opportunity for public comment.

13. CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

3

14.    CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, dredged spoil, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste.

15.    Federal regulations define "fill material" as any material that has the effect of replacing portions of the waters of the United States with dry land or changing the bottom elevation of a water of the United States. *See* 40 C.F.R. § 232.2.

16.    CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

17.    Federal regulations define "waters of the United States" to include, *inter alia*, (i) all waters which currently are used, were used in the past, or may be susceptible to use in interstate or foreign commerce, (ii) all interstate waters, (iii) tributaries of such waters, and (iv) wetlands adjacent to such waters or tributaries. 33 C.F.R. § 328.3 (2014); 40 C.F.R. § 232.2 (2014).[1]

18.    Federal regulations define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3 (2014); 40 C.F.R. § 232.2 (2014).

19.    CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

---

[1] The most recent version of the regulation defining "waters of the United States" is subject to a preliminary injunction in multiple states, including Indiana. *See West Virginia v. EPA*, 669 F. Supp. 3d 781 (D.N.D. 2023). Where that injunction applies, EPA and the Corps are interpreting the statutory term "waters of the United States" consistent with the pre-2015 regulatory regime and the Supreme Court's decision in *Sackett v. EPA*, 598 U.S. 651 (2023), among other precedents. *See* https://www.epa.gov/wotus/current-implementation-waters-united-states.

20. CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual."

**B.    Clean Water Act Section 308**

21. Section 308 of the CWA, 33 U.S.C. § 1318, authorizes EPA to require the disclosure of information, including site access, to carry out the purposes of the CWA.

22. Under Section 308 of the CWA, 33 U.S.C. § 1318, an owner or operator of a point source must provide information that EPA reasonably requires to determine whether any person is in violation of the CWA.

**C.    Clean Water Act Enforcement Provisions**

23. CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA Sections 301(a) or 308, 33 U.S.C. §§ 1311(a) and 1318.

24. CWA Section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA Sections 301(a) or 308, 33 U.S.C. §§ 1311(a) and 1318.

25. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), establishes civil penalties for violations of the CWA payable to the United States of up to $25,000 per day for each violation.

26. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996 (Pub. L. 104-134, Sec. 31001(s)), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note), as reflected in the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, the United States may seek civil penalties as adjusted for inflation for each violation occurring after January 12, 2009.

27.     Defendants are subject to a civil penalty of up to $66,712 per day for violations occurring after November 2, 2015, and assessed on or after December 27, 2023.  *See* 40 C.F.R. § 19.4; *see also* 88 Fed. Reg. 89309 (Dec. 27, 2023).

28.     Each day that dredged and/or fill material remains in the place where it is discharged without authorization constitutes a separate violation of CWA Section 301(a), 33 U.S.C. §1311(a).

29.     Each day that Defendants fail to submit a response to a request for information made by EPA under Section 308, 33 U.S.C. § 1318, constitutes a separate violation.

## GENERAL ALLEGATIONS

### A.  East Volkman Site

30.     The East Volkman Site is located at 2370 E. Volkman Road, in Vanderburgh County, Indiana, at 38.148842° North Latitude, -87.515329° West Longitude.  For convenience and context, a map depicting the East Volkman Site is attached to this Complaint as Exhibit A.

31.     At all times relevant to Counts I and V, Jason and Tara Schmitt have owned a shared one-half interest in the East Volkman Site, and James and Anita Schmitt have owned a shared one-half interest in the East Volkman Site.

32.     At various times relevant to the Complaint, Defendants have conducted agricultural activities at the East Volkman Site.

33.     Before the unauthorized discharges described in Paragraphs 45–47, the East Volkman Site contained at least three relatively permanent tributaries (hereinafter referred to as Channel 1, Channel 2, and Channel 3).

34.     Aerial imagery of the East Volkman Site from 2018 shows Channels 1, 2, and 3 containing running water as part of a forested, sinuous stream complex.  *See* Exhibit B.

35.    During a site inspection in August 2023, EPA personnel observed flowing water in Channel 1 and bed and bank characteristics and wetland vegetation along the sides of Channel 1.  EPA personnel also observed schools of fish at Channel 1's confluence with Channel 2.

36.    During the August 2023 site inspection, EPA personnel observed that flow was obstructed by multiple barriers of concrete blocks and riprap within Channel 2, creating standing pools of water upstream of the barriers. EPA personnel also observed wetland vegetation in Channel 2.

37.    During the August 2023 site inspection, EPA personnel observed standing pools of water and fish in ponded areas in Channel 3.  Flow in Channel 3 was also obstructed with a large earthen berm at the edge of the site.

38.    There had been no precipitation in the six days prior to EPA's site inspection in August 2023.

39.    The observations described in Paragraphs 34–38 support a determination that Channels 1, 2, and 3 are, or before the unauthorized discharges described in Paragraphs 45–47 were, relatively permanent tributaries with at least seasonal flow.

40.    Channels 1, 2, and 3 currently all run together on the East Volkman Site to form an unnamed relatively permanent tributary with continuous flow (marked in red on Exhibit C and Exhibit D), which connects, after about nine miles, to Bluegrass Creek (marked in green on Exhibit C and Exhibit D), another relatively permanent tributary with continuous flow. After about eleven miles, Bluegrass Creek connects to Pigeon Creek (confluence marked with a grey circle on Exhibit D).

41.    Pigeon Creek connects south through Evansville, Indiana, and, after about twenty miles, to the Ohio River at the border of Indiana and Kentucky.

7

42. The Ohio River is a traditional navigable water that has been used in interstate commerce.

43. Pigeon Creek flows continuously year-round, is navigable in fact, and was historically used in interstate shipping to provide access between the Wabash & Erie Canal and the Ohio River.

44. Channels 1, 2, and 3 are, and were at the time the alleged discharges occurred, "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

45. At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf and at their direction discharged dredged and/or fill material to waters of the United States on the East Volkman Site.

46. The dredged and/or fill material that Defendants and/or persons acting on their behalf caused to be discharged to waters of the United States on the East Volkman Site included, among other things, dirt, spoil, rock, and/or sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

47. Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material to waters of the United States on the East Volkman Site. This equipment constitutes "point source[s]" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

48. Defendants did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers of the Corps of Engineers, for the discharges of dredged and/or fill material to waters of the United States on the East Volkman Site, as required by CWA

Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344, nor were the discharges authorized under any other provision of the CWA.

49. At all times relevant to Counts I and V, one or more of the Defendants conducted, contracted for, supervised, and/or otherwise controlled the unauthorized discharges referenced in Paragraphs 45–47.

50. Each of the Defendants is a "person" within the meaning of CWA Section 502(5), 33 U.S.C. § 1362(5).

51. Defendants have allowed pollutants to remain in waters of the United States at the East Volkman Site.

52. Each day that such unauthorized dredged and/or fill material remains in place constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

53. Unless enjoined, Defendants are likely to continue to discharge dredged and/or fill material to, and/or to allow dredged and/or fill material to remain in, waters of the United States at the East Volkman Site in violation of CWA Section 301, 33 U.S.C. § 1311.

**B. <u>Old Highway 57 Site</u>**

54. The Old Highway 57 Site is located adjacent to Old Highway 57, in northern Vanderburgh County, Indiana, at 38.140539° North Latitude, -87.482740° West Longitude. For convenience and context, a map depicting the Old Highway 57 Site is attached to this Complaint as Exhibit E.

55. At all times relevant to Counts II and V, Jason Schmitt has owned a one-half interest in the Old Highway 57 Site, and James and Anita Schmitt have owned a shared one-half interest in the Old Highway 57 Site.

56.    At various times relevant to the Complaint, Defendants have conducted agricultural activities at the Old Highway 57 Site.

57.    The Old Highway 57 Site includes at least one water feature, a relatively permanent tributary that flows continuously year-round ("Channel A").

58.    During a site inspection in August 2023, EPA personnel observed continuously flowing surface water in Channel A within the Old Highway 57 Site boundary, bankfull indicators, and wetland vegetation in and along Channel A.  There had been no precipitation in the seven days prior to EPA's site inspection.

59.    During the August 2023 site inspection, the EPA inspection team also conducted a Streamflow Duration Assessment based on upstream and downstream conditions from the modified state of Channel A within the site boundary. This Streamflow Duration Assessment determined that Channel A was a perennial tributary (i.e., has year-round continuous flow).

60.    The observations described in Paragraphs 58–59 support a determination that Channel A is, or before the unauthorized discharges described in Paragraphs 63–65 was, a relatively permanent tributary.

61.    Channel A (marked in blue on Exhibit C and Exhibit D) connects, after about 1.1 miles, to the same unnamed relatively permanent tributary that flows from the East Volkman Site (confluence marked with a purple circle on Exhibit C and Exhibit D). The unnamed relatively permanent tributary connects, after about nine miles, to Bluegrass Creek (marked in green on Exhibit C and Exhibit D), a relatively permanent tributary with continuous flow. After about eleven miles, Bluegrass Creek connects to Pigeon Creek (confluence marked with a grey circle on Exhibit D).

62.     Channel A is, and was at the time the alleged discharges occurred, a "water[] of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

63.     At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf and at their direction discharged dredged and/or fill material to waters of the United States on the Old Highway 57 Site.

64.     The dredged and/or fill material that Defendants and/or persons acting on their behalf caused to be discharged to waters of the United States on the Old Highway 57 Site included, among other things, dirt, spoil, rock, and/or sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

65.     Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material to waters of the United States on Old Highway 57 Site.  This equipment constitutes "point source[s]" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

66.     Defendants did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers of the Corps of Engineers, for the discharges of dredged and/or fill material to waters of the United States on Old Highway 57 Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344, nor were the discharges authorized under any other provision of the CWA.

67.     At all times relevant to Counts II and V, one or more of the Defendants conducted, contracted for, supervised, and/or otherwise controlled the unauthorized discharges referenced in Paragraph 63–65.

68.     Defendants have allowed pollutants to remain in waters of the United States at the Old Highway 57 Site.

69.     Each day that such unauthorized dredged and/or fill material remains in place constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

70.     Unless enjoined, Defendants are likely to continue to discharge dredged and/or fill material to, and/or to allow dredged and/or fill material to remain in, waters of the United States at the Old Highway 57 Site in violation of CWA Section 301, 33 U.S.C. § 1311.

## C. **Pigeon Creek Site**

71.     The Pigeon Creek Site is located about two miles from Evansville, Indiana, in Warrick County, Indiana, at 38.0383° North Latitude, -87.46872° West Longitude. For convenience and context, a map depicting the Pigeon Creek Site is attached to this Complaint as Exhibit F.

72.     At all times relevant to Counts III and V, James and Anita Schmitt have owned a shared one-half interest in the Pigeon Creek Site, and Jason Schmitt has owned a one-quarter interest in the Pigeon Creek Site.

73.     At various times relevant to the Complaint, Defendants have conducted agricultural activities at the Pigeon Creek Site.

74.     The Pigeon Creek Site includes at least three water features: one unnamed relatively permanent tributary that connects to Pigeon Creek; Pigeon Creek itself; and wetlands abutting Pigeon Creek.

75.     Pigeon Creek is a traditional navigable water that has been used in interstate commerce.

76.    During a site inspection in August 2023, EPA personnel observed tributary characteristics in the streambed of the unnamed tributary of Pigeon Creek indicative of relative permanence, including surface soil cracks, algae crust, and drainage patterns indicating historical water movement within the channel.  There had been no precipitation in the eight days prior to EPA's site inspection.

77.    The unnamed tributary of Pigeon Creek historically has had at least seasonal flow.

78.    The observations described in Paragraphs 76–77 support a determination that the unnamed tributary of Pigeon Creek is, or before the unauthorized discharges described in Paragraphs 83–86 was, a relatively permanent tributary.

79.    During a visit to the Pigeon Creek Site in 2015, Army Corps of Engineers personnel observed 0.1 acres of wetlands abutting Pigeon Creek and containing the unnamed tributary of Pigeon Creek within its boundaries, marked in white on Exhibit F.

80.    During a site inspection in August 2023, EPA personnel observed wetland vegetation, hydrologic indicators, and hydric soil conditions in the location of the wetland identified by the Corps.  There had been no precipitation in the eight days prior to EPA's site inspection.

81.    Based on the observations described in Paragraphs 79–80, the wetland at the Pigeon Creek Site is, or before the unauthorized discharges described in Paragraphs 83–86 was, a wetland possessing a continuous surface connection with Pigeon Creek.

82.    Pigeon Creek, the unnamed tributary of Pigeon Creek, and the abutting wetland at the Pigeon Creek Site are, and were at the time the alleged discharges occurred, "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

83.     At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf and at their direction discharged dredged and/or fill material to waters of the United States on the Pigeon Creek Site.

84.     At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf discharged dredged and/or fill material to wetlands on the Pigeon Creek Site that are "waters of the United States" within the meaning of the CWA and the regulations promulgated thereunder, including all regulations that were in effect at the time of Defendant's activities described herein.

85.     The dredged and/or fill material that Defendants and/or persons acting on their behalf caused to be discharged to waters of the United States on the Pigeon Creek Site included, among other things, dirt, spoil, rock, and/or sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

86.     Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material to waters of the United States on the Pigeon Creek Site.  This equipment constitutes "point source[s]" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

87.     Defendants did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers of the Corps of Engineers, for the discharges of dredged and/or fill material to waters of the United States on the Pigeon Creek Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344, nor were the discharges authorized under any other provision of the CWA.

88.     At all times relevant to Counts III and V, one or more of the Defendants conducted, contracted for, supervised, and/or otherwise controlled the unauthorized discharges referenced in Paragraphs 83–86.

89.     Defendants have allowed pollutants to remain in waters of the United States at the Pigeon Creek Site.

90.     Each day that such unauthorized dredged and/or fill material remains in place constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

91.     Unless enjoined, Defendants are likely to continue to discharge dredged and/or fill material to, and/or to allow dredged and/or fill material to remain in, waters of the United States at the Pigeon Creek Site in violation of CWA Section 301, 33 U.S.C. § 1311.

**D.  Gibson County Site**

92.     The Gibson County Site is located about 0.4 miles east of the intersection of County Road 1200 South and Posey County Line Road, in southern Gibson County, Indiana, at 38.181143° North Latitude, -87.680736° West Longitude.  For convenience and context, a map depicting the Gibson County Site is attached to this Complaint as Exhibit G.

93.     At all times relevant to Counts IV and V, Jason and Tara Schmitt have owned the Gibson County Site.

94.     At various times relevant to the Complaint, Defendants have conducted agricultural activities at the Gibson Country Site.

95.     The Gibson County Site includes at least one water feature, a relatively permanent tributary ("Channel B").

15

96. During a site inspection in August 2023, EPA personnel observed flowing surface water, along with fish and frogs, in Channel B. There had been no precipitation in the seven days prior to EPA's site inspection.

97. The observations described in Paragraph 96 support a determination that Channel B is, or before the unauthorized discharges described in Paragraphs 100–102 was, a relatively permanent tributary with year-round continuous flow.

98. Channel B (marked in red on Exhibit H) flows 300 feet to the Newman Lateral (marked in blue on Exhibit H and Exhibit I), a relatively permanent tributary with continuous flow. After about one-half mile, the Newman Lateral connects to Big Creek (marked in green on Exhibit H and Exhibit I), a relatively permanent tributary with continuous flow. After about nineteen miles, Big Creek connects to the Wabash River (marked in yellow on Exhibit I), a traditional navigable water that has been used in interstate commerce.

99. Channel B is, and was at the time the alleged discharges occurred, a "water[] of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

100. At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf and at their direction discharged dredged and/or fill material to waters of the United States on the Gibson County Site.

101. The dredged and/or fill material that Defendants and/or persons acting on their behalf caused to be discharged to waters of the United States on the Gibson County Site included, among other things, dirt, spoil, rock, and/or sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

102.    Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material to waters of the United States on the Gibson County Site. This equipment constitutes "point source[s]" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

103.    Defendants did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers of the Corps of Engineers, for the discharges of dredged and/or fill material to waters of the United States on the Gibson County Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344, nor were the discharges authorized under any other provision of the CWA.

104.    At all times relevant to Counts IV and V, one or more of the Defendants conducted, contracted for, supervised, and/or otherwise controlled the unauthorized discharges referenced in Paragraph 100–102.

105.    Defendants have allowed pollutants to remain in waters of the United States at the Gibson County Site.

106.    Each day that such unauthorized dredged and/or fill material remains in place constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

107.    Unless enjoined, Defendants are likely to continue to discharge dredged and/or fill material to, and/or to allow dredged and/or fill material to remain in, waters of the United States at the Gibson County Site in violation of CWA Section 301, 33 U.S.C. § 1311.

### E.  Violations of CWA Section 308

108.    In accordance with Section 308 of the CWA, 33 U.S.C. § 1318, EPA sent Defendants written requests for information about the Sites to determine whether a violation of the CWA had occurred.

109.    On July 20, 2022, EPA issued a Request for Information under Section 308 of the CWA, 33 U.S.C. § 1318, to James and Anita Schmitt via certified mail.  The Request for Information directed James and Anita Schmitt to respond via electronic mail within 30 calendar days.  According to the United States Postal Service, the Request for Information was received by Anita Schmitt on July 23, 2022.

110.    On September 2, 2022, EPA issued a Request for Information under Section 308 of the CWA, 33 U.S.C. § 1318, to Jason and Tara Schmitt via certified mail.  The Request for Information directed Jason and Tara Schmitt to respond via electronic mail within 30 calendar days.  According to the United States Postal Service, the Request for Information was delivered and left with an individual at Jason and Tara Schmitt's residence on September 6, 2022.

111.    On November 14, 2022, EPA Region 5 issued an Administrative Order under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), to James and Anita Schmitt via certified mail, ordering them to respond within 30 days to the CWA Section 308 Request for Information sent to the same address.  According to the United States Postal Service, the Administrative Order was delivered and left with an individual at James and Anita Schmitt's residence on November 19, 2022.

112.    On November 14, 2022, EPA Region 5 issued an Administrative Order under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), to Jason and Tara Schmitt via certified mail, ordering them to respond within 30 days to the CWA Section 308 Request for Information sent to the same address.  According to the United States Postal Service, the Administrative Order was delivered and left with an individual at Jason and Tara Schmitt's residence on November 19, 2022.

113.   To date, none of the Defendants has responded to EPA's Information Requests or Administrative Orders.

## COUNT I
## UNPERMITTED DISCHARGE OF POLLUTANTS—EAST VOLKMAN SITE

114.   Plaintiff repeats the allegations set forth in Paragraphs 1 through 113, as if set forth herein.

115.   At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material from a point source to waters of the United States on the East Volkman Site without a permit or authorization under Section 404 of the CWA, 33 U.S.C. § 1344.

116.   Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged and/or fill material to waters of the United States at the East Volkman Site.

117.   Due to Defendants' violations of the CWA as described herein, and in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b), Defendants are subject to appropriate relief, including both civil penalties and a temporary or permanent injunction.

118.   The CWA violations alleged herein are ongoing as of the date of the filing of this Complaint.

## COUNT II
## UNPERMITTED DISCHARGE OF POLLUTANTS—OLD HIGHWAY 57 SITE

119.   Plaintiff repeats the allegations set forth in Paragraphs 1 through 118, as if set forth herein.

120.    At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material from a point source to waters of the United States on the Old Highway 57 Site without a permit or authorization under Section 404 of the CWA, 33 U.S.C. § 1344.

121.    Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged and/or fill material to waters of the United States at the Old Highway 57 Site.

122.    Due to Defendants' violations of the CWA as described herein, and in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b), Defendants are subject to appropriate relief, including both civil penalties and a temporary or permanent injunction.

123.    The CWA violations alleged herein are ongoing as of the date of the filing of this Complaint.

## COUNT III
## UNPERMITTED DISCHARGE OF POLLUTANTS—PIGEON CREEK SITE

124.    Plaintiff repeats the allegations set forth in Paragraphs 1 through 123, as if set forth herein.

125.    At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material from a point source to waters of the United States on the Pigeon Creek Site without a permit or authorization under Section 404 of the CWA, 33 U.S.C. § 1344.

126.    Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged and/or fill material to waters of the United States at the Pigeon Creek Site.

127.    Due to Defendants' violations of the CWA as described herein, and in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b), Defendants are subject to appropriate relief, including a temporary or permanent injunction.

128.    The CWA violations alleged herein are ongoing as of the date of the filing of this Complaint.

## COUNT IV
## UNPERMITTED DISCHARGE OF POLLUTANTS—GIBSON COUNTY SITE

129.    Plaintiff repeats the allegations set forth in Paragraphs 1 through 128, as if set forth herein.

130.    At various times relevant to this Complaint, one or more of the Defendants and/or persons acting on their behalf used excavators, bulldozers, trucks, and/or other earth-moving equipment to discharge dredged and/or fill material from a point source to waters of the United States on the Gibson County Site without a permit or authorization under Section 404 of the CWA, 33 U.S.C. § 1344.

131.    Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged and/or fill material to waters of the United States at the Gibson County Site.

132.    Due to Defendants' violations of the CWA as described herein, and in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b), Defendants are subject to appropriate relief, including a temporary or permanent injunction.

133. The CWA violations alleged herein are ongoing as of the date of the filing of this Complaint.

## COUNT V
## FAILURE TO PROVIDE INFORMATION PURSUANT TO CWA SECTION 308

134. Plaintiff realleges and incorporates by reference Paragraphs 1 through 133, as if set forth herein.

135. By failing to provide information reasonably required by EPA pursuant to Section 308 of the CWA, Defendants are in violation of Section 308.

136. Due to Defendants' failure to provide information reasonably required by EPA under Section 308 of the CWA, and in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b), Defendants are subject to appropriate relief, including civil penalties.

137. The CWA violations alleged herein are ongoing as of the date of the filing of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1. That the Defendants be permanently enjoined from discharging or causing the discharge of dredged and/or fill material or other pollutants to any waters of the United States at the Sites, except in compliance with the CWA;

2. That the Defendants be enjoined to undertake measures, at Defendants' own expense and at the direction of EPA, to effect complete restoration of the waters of the United States at the Sites, and/or to conduct compensatory mitigation for environmental impacts, as appropriate;

3.      That the Defendants be assessed, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of CWA Section 301(a), 33 U.S.C. § 1311(a);

4.      That the United States be awarded costs and disbursements in this case;

5.      That the Court retain jurisdiction of this case for the purpose of making any order or decree that the Court may deem necessary at any time to enforce and administer Defendants' compliance with the terms and provisions of this Court's Orders or decrees; and

6.      That the Court award such further and additional relief as may be just and proper, or necessary and appropriate in aid of its jurisdiction under 28 U.S. C. § 1651.


Respectfully submitted, this 14th day of November 2024, by


TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

/s/ Samuel B. Stratton
SAMUEL B. STRATTON
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044
Tel: 202-514-6535

*Counsel for the United States*

23

OF COUNSEL:

Thomas Martin
Associate Regional Counsel
United States Environmental Protection Agency
Office of Regional Counsel, Region 5
77 W. Jackson Blvd. (C-14J) Chicago, IL 60604

Sophie Grueterich
Associate Regional Counsel
United States Environmental Protection Agency
Office of Regional Counsel, Region 5
77 W. Jackson Blvd. (C-14J) Chicago, IL 60604

Erandi Ratnayake
Attorney-Advisor
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Ave., Washington, DC 20460